UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
COURTNEY SCOTT FONTES,         )
                               )
          Plaintiff,           )
                               )
     v.                        )          C.A. No. 20-151 WES
                               )
MARIO LOPEZ, et al.,           )
                               )
          Defendants.          )
_____)
```

## MEMORANDUM AND ORDER

Before the Court are Defendants' Motion to Dismiss, ECF No. 14, and pro se Plaintiff's Motion for Extension of Time and to Appoint Counsel, ECF No. 13. Plaintiff, an inmate at the Adult Correctional Institution of the Rhode Island Department of Corrections ("DOC"), alleges claims of "[s]exual [h]arassment, [r]etaliation, [h]arassment, and gender [d]iscrimination" under 42 U.S.C. § 1983 against six DOC employees. Compl. 2-3, 12, ECF No. 1. Plaintiff has not filed a response to the Motion to Dismiss. For the reasons explained below, Plaintiff's Motion for Extension of Time and to Appoint Counsel, ECF No. 13, is DENIED, and Defendants' Motion to Dismiss, ECF No. 14, is GRANTED IN PART AND DENIED IN PART.

I.   Background

Based on an overall reading of the Complaint and attached Exhibit to the Complaint, ECF No. 1-1, Plaintiff alleges multiple

distinct sets of facts.[1]  First, in the morning of July 30, 2019, a DOC officer said, "Good Morning Ms. Fontes[,]" to Plaintiff. Id. at 3.  Defendant Mario Lopez ("Defendant Lopez"), another DOC officer, overheard and repeatedly said to Plaintiff while laughing, "you['re] not a woman[,] you['re] a man[,]" and then repeatedly questioned whether Plaintiff had male or female genitalia.  Id.; see also Compl. 5.  She alleges that since January 10, 2020 (a gap in time left unexplained), Defendant Lopez has repeatedly stared at her, and sometimes he makes eye contact, smiles, and laughs in an intimidating manner.  See Ex. to Compl. 4.  She states that since the incident in July 2019, she has felt "uncomfortable[,]" "unsafe to be [her] true self around prison officials[,]" and "afraid to hold a conversation with staff because [she is] afraid [of] where it may lead to." Id. at 10.

Second, on February 9, 2020, Plaintiff apparently broke the handle of a "foxtail".[2]  Id. at 7.  Upon review of the video, a DOC officer, Defendant Walter Duffy ("Defendant Duffy"), determined that the breaking was intentional, which she

---

[1] Of relevance to these facts are Plaintiff's statements throughout the Exhibit to the Complaint (apart from one letter) that indicate that she identifies as a transgender woman.  See Ex. to Compl. 3 ("I[,] Ms. Fonte[s,] state [I] am a [t]ransgender woman . . . ."); id. at 10 ("I am and will always be a transgender woman").  But see Ex. to Compl. 11.  The Court will therefore refer to Plaintiff using "she/her" pronouns.
[2] A foxtail is a small handheld broom.

disputes.  Id.  According to a DOC Offender's Report included in the Exhibit to the Complaint, the handle was not found, and she was disciplined.  Id.  She represents that she received 60 days of administrative confinement for the broken handle, issued by Defendant Corey Cloud ("Defendant Cloud") and was not allowed to work during this time.  Id. at 18-19; see also id. at 23. She apparently learned that Defendant Duffy had spoken to another inmate about the event and suggested that Plaintiff had blamed that inmate.  Id. at 5.  When she approached Defendant Duffy on February 12, 2020 and asked to speak with him about the missing handle, Defendant Duffy reportedly told her repeatedly to "Get the [f]uck out my [f]ace[.]"  Id.  Defendant Duffy later approached her and demanded that she sign a safety form.  Id. at 6.  When she refused, Defendant Duffy said, "sign [t]he [f]uckin[] [f]orm or [I]'ll have your ass in segregation and off to High side."  Id.

Third, on March 9, 2020, Plaintiff was called into an office to meet with DOC officer Nuno Figueiredo ("Defendant Figueiredo").  Id. at 30.  Defendant Figueiredo asked her to show him the contents of a mailing she made to the American Civil Liberties Union.  Id.  After she refused to show him, Defendant Figueiredo asked if the mailing concerned her past complaints.

Id.  When she responded that it did, Defendant Figueiredo told her to "leave [the issue] alone."  Id.

Fourth, on March 14, 2020, Plaintiff and another inmate approached Defendant Lieutenant Atella[3] ("Defendant Atella") to ask him about changes in recreation times.  Id. at 8.  After Defendant Atella told her that the changes did not concern her, the conversation escalated, culminating in Defendant Atella stating, "[D]o you know what my fuckin[g] [j]ob is? . . . to [f]uckin[g] smash mother[f]uckers like you now shut the [f]uck up befor[e] you find out."  Id.  The next day, Defendant Atella called her a "[f]uckin[g] [p]unk[.]"  Id. at 9.  According to a DOC Offender's Report included in the Exhibit to the Complaint, Plaintiff was disciplined for this interaction for providing false information to staff, as Defendant Atella disputed that he had used any profane language.  Id. at 15-16.

Fifth, without specifying a date or time, Plaintiff states that she "was told by Warden Jeffrey Aceto [to] stop l[y]ing [about] staff [because] any [further] complaints will result in disciplin[ary] actions."  Compl. 8.

Plaintiff states that at a disciplinary hearing on March 18, 2020, she was "not giv[en] counsel nor was [she] able to call [her] witness."  Ex. to Compl. 12.  It is not clear which

---

[3] Lieutenant Atella's first name is not provided in Plaintiff's Complaint.

events were the subject of the hearing.  _Id._  It is also not clear which, if any, of the Defendants were present for or associated with this hearing.  _Id._

Plaintiff submitted several complaints to various DOC authorities in 2019 and 2020 under the Prison Rape Elimination Act ("PREA").  _See generally_ _id._ at 18-27.  It appears from the correspondence that Plaintiff's complaints concerned the events with Defendants Lopez and Duffy.  _See_ _id._ at 23 ("I am writing in response to your letter dated February 24, 2020, concerning a PREA complaint, allegations of staff harassment and placement on [administrative confinement].").  Plaintiff's initial allegation of sexual harassment was substantiated by the Office of Inspections in September 2019.  _See_ _id._ at 22-23.

As relief, Plaintiff seeks "[p]unitive & emotional distress" damages of $25,000[4] and "[p]unishing the Defendants for the[i]r actions."  Compl. 5.

## II. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[4] On May 15, 2020, Plaintiff moved, and was granted, leave to amend her Complaint, to, among other things, increase her claimed damages from $25,000 to $50,000.  _See_ Mot. to Amend, ECF No. 7; _see also_ May 18, 2020 Text Order.  The Court directed Plaintiff to file her amended complaint within thirty days, but she did not do so.  _See_ May 18, 2020 Text Order.

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In examining whether a plaintiff is entitled to relief, the Court must indulge all reasonable inferences in the plaintiff's favor.  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  Further, a filing by a pro se party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotations and citations omitted).  But "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Iqbal, 556 U.S. at 678 (citation and quotations omitted).

In "deciding a 12(b)(6) motion, 'the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim.'"  Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004) (quoting Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003)). "This obligation means that a court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default."  Id. (citing Pinto v. Universidad De P.R., 895 F.2d

6

18, 19 & n.1 (1st Cir. 1990)) (other citations and quotations omitted).

III. Discussion

In her Complaint, Plaintiff alleges claims of "[s]exual [h]arassment, [r]etaliation, [h]arassment, and gender [d]iscrimination" under 42 U.S.C. § 1983 against six DOC employees.  Compl. 2-3, 12.  She makes no other reference to federal or state laws or statutes in the Complaint or Exhibit to the Complaint.  The Court addresses each claim in turn.

A.   Sexual Harassment

After review of the facts, the Court infers that Plaintiff alleges claims of sexual harassment against Defendant Lopez for his comments to her in July 2019.  See Ex. to Compl. 3-4.  As Plaintiff does not point to a single state or federal law as the basis for her claim, the Court can only assume that she seeks to advance this claim under PREA, as she previously filed one or more PREA complaints with DOC authorities about the incident with Defendant Lopez.  See id. 18-19, 21-24.

PREA was enacted to address allegations of rape and sexual harassment that occur within a prison facility.  See 28 C.F.R. § 115.6 (detailing definitions of rape and sexual harassment under the statute).  The remedy for violations of PREA is discipline for the offending party.  See 28 C.F.R. § 115.76 (detailing disciplinary sanctions for staff who violate agency

sexual abuse or sexual harassment policies).   PREA does not, however, provide for a private cause of action.   See Gagnon v. Fitzpatrick, 1:15-CV-00355-JDL, 2015 WL 8601316, at *2 (D. Me. Nov. 4, 2015), report and recommendation adopted, 2015 WL 8664212 (D. Me. Dec. 11, 2015) ("Nothing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (citation and quotations omitted)); Bowens v. Wetzel, 674 Fed. Appx. 133, 137 (3d Cir. 2017) (holding that PREA does not create a private right of action); Chao v. Ballista, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (citing courts across jurisdictions holding that PREA does not afford litigants a private cause of action).   Plaintiff therefore cannot advance a claim of sexual harassment under PREA in this Court. Defendants' Motion to Dismiss with respect to Plaintiff's claim of sexual harassment is GRANTED.

B.   Retaliation

The Court gleans from Plaintiff's materials that she alleges two instances of retaliation.   First, she alleges retaliation from Defendant Duffy for the events that took place between her and Defendant Lopez in July 2019 and her subsequent complaint to DOC authorities (which was later substantiated by the Office of Inspection in September 2019).   See Ex. to Compl.

1, 18-19.  Plaintiff pleads, for example, that the discipline she received for breaking the broom and subsequent restrictions on working constitute retaliation.  Id. at 18-19.  Second, without pleading additional details, she states that she "was told by Warden Jeffrey Aceto [to] stop l[y]ing [about] staff [because] any [further] complaints will result in disciplin[ary] actions."  Compl. 8.

"To make out a prima facie case of First Amendment retaliation," Plaintiff must allege facts that would show that (1) she "engaged in an activity protected by the First Amendment"; (2) Defendants "took an adverse action against" her; and (3) "there is a causal link between the protected activity and the adverse action."  Staples v. Gerry, 923 F.3d 7, 15 (1st Cir. 2019) (citation omitted).  With respect to the third element, she must plausibly allege that this protected activity "was a substantial or motivating factor for the adverse [action]."  Padilla-Garcia v. Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).

As the State acknowledges, Plaintiff's filing of the PREA Complaint is protected activity.  See Mem. in Supp. of Mot. to Dismiss 19 (citing Bounds v. Smith, 430 U.S. 817, 821 (1977); Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980)).  Her

placement into administrative confinement further constitutes an
"adverse action." Staples, 923 F.3d at 15.

Therefore, the analysis here turns on causation. Plaintiff
alleges that "[e]ver since [she filed her] PREA complaint,"
Defendant Duffy "has been relentlessly harassing" her. See Ex.
to Compl. 18. For example, in February 2020, Plaintiff broke a
broom handle, an act to which Plaintiff admits and that DOC
officials determined was intentional after review of
surveillance video, which then led to a disciplinary hearing and
placement into administrative confinement. See id. at 7. But,
with respect to this event, Plaintiff claims that Defendant Duffy
"embellish[ed]" his report. Id. at 18. Plaintiff further
alleges that she was given 60 days of Administrative Segregation
for breaking the handle, which she alleges is excessive for that
type of offense. Id. ("My placement on [administrative
segregation] for a minor booking in which [I] only received 5
days LOP [loss of privileges] is not justifiable[.]"). Moreover,
she alleges that she was booked on additional, unreasonable
charges. Id. at 18-19. These events occurred after her initial
PREA complaint was substantiated in September 2019. See id.

Courts in this circuit have stated that "evidence of an
individual's state of mind is often unavailable at the time a
complaint is filed." Mattei v. Dunbar, CIV.A. 13-12195-FDS,
2015 WL 926044, at *5 (D. Mass. Mar. 4, 2015) (citing McDonald

10

v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)); accord Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980) (recognizing that "a retaliatory state of mind typically is not susceptible to proof by direct evidence that can be averred in a complaint" (citation omitted)).  "Therefore, to survive a motion to dismiss, a pro se complaint need only provide some plausible support for an inference of retaliation."  Id. (citing McDonald, 610 F.2d at 18; Schofield v. Clarke, 769 F. Supp. 2d 42, 47 (D. Mass. 2011)). At this stage, Plaintiff has pleaded facts to sufficiently suggest that Defendant Duffy made efforts to retaliate against her for the PREA Complaint.  See Hudson v. MacEachern, 94 F. Supp. 3d 59, 68 (D. Mass. 2015) ("At the motion to dismiss stage, intent, in some circumstances, can be inferred from a chronology of events which may support an inference of retaliation." (internal quotation marks and citation omitted)).

As to Defendant Aceto, however, Plaintiff has failed to state a claim because the Complaint lacks specific allegations

related to the allegedly retaliatory actions of Defendant Aceto. See Compl. 8.

Therefore, Defendants' Motion to Dismiss with respect to Plaintiff's claims of retaliation is GRANTED as to Defendant Aceto but DENIED as to Defendant Duffy.

C.   Harassment and Gender Discrimination

The Court now turns to Plaintiff's remaining claims of harassment and gender discrimination. Again, Plaintiff does not point to a single federal or state law as the basis for these claims. See generally Compl.; Ex. to Compl. Plaintiff makes piecemeal accusations throughout the Exhibit to the Complaint that a specific Defendant has harassed or discriminated against her, but never clarifies whether she alleges these claims against all Defendants. Ex. to Compl. 18 ("Ever since my PREA complaint, Cpt. Walter Duffy has been relentlessly harassing me and being disrespectful."); see also id. at 10 ("But after the sexual harassment and discrimination of 7/30/19 at 7:15 AM by C/O Mario Lopez [I] have become very protective of myself.").

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted).

Here, Plaintiff's claims amount to several instances where Defendants have yelled at her or made comments that made her feel uncomfortable, as well as several instances where Plaintiff has been punished for various infractions.  Without more, her use of the words "harassment" and "discrimination" are not enough to establish valid claims where she has not even recited the elements of a cause of action, let alone moved beyond a formulaic recitation of one.  Defendants' Motion to Dismiss with respect to Plaintiff's claims of harassment and discrimination is GRANTED.

IV.  Plaintiff's Motion for Extension of Time and for Appointment of Counsel

Plaintiff filed her Motion for Extension of Time and for Appointment of Counsel prior to Defendants' filing any motions, asking generally for an extension due to restrictions from the COVID-19 pandemic and general unfamiliarity with the civil legal system, and for appointment of an attorney.  Mot. for Ext. of Time 1.  As Defendants had not filed a motion at the time of Plaintiff's filing, there was nothing for the Court to extend. Plaintiff has therefore not demonstrated the "good cause" required for the motion to be granted.  See Fed. R. Civ. P.

6(b)(1).  The motion with respect to the extension of time must be denied on that basis.

Further, the Court may "request an attorney to represent any person unable to afford counsel" in a civil case.  28 U.S.C. § 1915(e)(1).  However, there is no absolute right to appointed counsel in a civil case.  DesRosiers v. Moran, 949 F.2d 15, 23-24 (1st Cir. 1991).  Plaintiff bears the burden of demonstrating that "exceptional circumstances [a]re present such that a denial of counsel [i]s likely to result in fundamental unfairness impinging on [her] due process rights."  Id. at 23 (citation omitted).  The Court must examine the overall case to determine whether exceptional circumstances exist, considering, inter alia, "the merits of the case, the complexity of the legal issues, and the litigant's ability to represent [her]self."  Id. at 24 (citations omitted).  Here, Plaintiff clearly understands legal procedures and has the capacity to pursue her claims, as demonstrated by her extensive efforts to submit complaints to DOC authorities.  See Ex. to Compl. 20-24.  The claims here do not appear to be so extensive or complicated that she could not develop them on her own.  The Court therefore determines that, for the time being, Plaintiff has not met the test for appointment of counsel.  This may change, however, depending on how the case develops.  Plaintiff's Motion for Extension of Time

14

is DENIED and the Motion to Appoint Counsel is DENIED without prejudice to refiling at a later date if circumstances warrant.

V.   Conclusion

For those reasons, Defendants' Motion to Dismiss, ECF No. 14, is GRANTED IN PART AND DENIED IN PART.   Plaintiff's Motion for Extension of Time and to Appoint Counsel, ECF No. 13, is DENIED.


IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date: July 28, 2021